# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

**FILED**

JAN 14 2013

Phil Lombardi, Clerk
U.S. DISTRICT COURT

Terry Reon Darnell
TERRY DARnell

Petitioner (name under which you were convicted)

vs.

Case Number: 13-CV-28-GKF-PJC
(Assigned by Court Clerk)

Tim Wilkerson, Warden

Respondent (authorized person having custody of
petitioner)

The Attorney General of the State of : Oklahoma

| Current Location (including Address) of Confinement : | Prisoner Number: |
|---|---|
| 6888 East 133rd Road Holdenville, Oklahoma 74848 (405) 379-6400 | 546875 |

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    Tulsa County District Court

    (b) Criminal docket or case number (if you know):   CF-2008-6186.

2.  (a) Date of the judgment of conviction (if you know):   March 17, 2010

    (b) Date of sentencing:   May 4, 2010

3.  Length of sentence:   Life.

4.  In this case, were you convicted on more than one count or of more than one crime?
    [X] Yes   [ ] No

5.  Identify all crimes of which you were convicted and sentenced in this case:   Robbery (W) Dangerous weapon, burglary 1st Degree, Possession - Firearm AFC, Larceny - Automobile,

6.  (a) What was your plea? (Check one)
    [X] (1) Not guilty   [ ] (3) Nolo contendere (no contest)
    [ ] (2) Guilty   [ ] (4) Insanity plea

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?   **N/A**

                                                                           ''

                                                                                    ''

(c) If you went to trial, what kind of trial did you have? (Check one)
    [X] Jury   [ ] Judge only

7. Did you testify at a pretrial hearing, trial, or a post-trial hearing?
    [ ] Yes  [X] No

8. Did you appeal from the judgment of conviction?
    [X] Yes  [ ] No

9. If you did appeal, answer the following:

(a) Name of court:    **Court of Criminal Appeals**

(b) Docket or case number (if you know):    **F-2010-452**

(c) Result:    **Affirmed / Denial**

(d) Date of result (if you know):    **October 4 2011**

(e) Citation to the case (if you know):    **Non-Summary Opinion**

(f) Grounds raised:   **The evidence was insufficient to establish First Degree Burglary - insufficient for larceny - double jeopardy - Evidentairy Harpaon. Doctrine. Prior Felony used (3) were transactional - Ineffective Assistance of Counsel fair to object prejudicial - denial fair trial**

(g) Did you file a petition for certiorari in the United States Supreme Court?  [ ] Yes  [X] No

If yes, answer the following:

(1) Docket or case number (if you know):    **N/A**

(2) Result:                                               ''

(3) Date of result (if you know):        

(4) Citation to the case (if you know):     ''

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or or motions concerning this judgment of conviction in any state court?  [X] Yes  [X] No

11. If your answer to Question 10 was "Yes," give the following information:

(a)   (1) Name of court:    **Court of Criminal Appeals**

     (2) Docket or case number (if you know):    **F-2010-452**

(3) Date of filing (if you know): _N October 29 2011_

(4) Nature of the proceeding: _Motion - Remand - Evidentiary_

(5) Grounds raised: _Defense counsel failed to object to transactional prior Felony offenses in the sentencing stage; The gate keeping requirement of Rule 3.11 (B)(3)(b), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18 App. (2010)_

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? ☐ Yes  ☒ No

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _Court of Criminal Appeals_

(2) Docket or case number (if you know): _F-2010-452_

(3) Date of filing (if you know): _October 2011_

(4) Nature of the proceeding: _Petition for Rehearing_

(5) Grounds raised: _Evidence - insufficient to establish the offense - 1st Degree Burglary; Three of the Four Felony convictions used to enhance Appellants Sentence in the sentencing stage were transactional._

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? ☐ Yes  ☒ Yes  _NO_

(7) Result: _____

(8) Date of result (if you know): _____

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _Court of Criminal Appeals_

(2) Docket or case number (if you know): _F-2010-452_

(3) Date of filing (if you know): _July 26, 2010_

(4) Nature of the proceeding: _Petition In Error_

(5) Grounds raised:

_Summary out-line - Appelate Brief_

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion? ☐ Yes ☒ No

(7) Result: _____

(8) Date of result (if you know): _____

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition: ☒ Yes ☐ No

(2) Second petition: ☒ Yes ☐ No

(3) Third petition: ☒ Yes ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_N/A_

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:** _The evidence was insufficient to establish the offense of First Degree Burglary in Count Four._

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_See Attached -_

_____

_____

_____

_____

<u>**PROPOSITION ONE:**</u>

**THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH THE OFFENSE OF FIRST DEGREE BURGLARY IN COUNT FOUR.**

### *Standard of Review*

The standard of review for an insufficient evidence claim is whether, "[w]hen viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Johnson v. State,* 2004 OK CR 24, ¶ 10, 93 P.3d 41, 44-45, quoting *Spueler v. State,* 1985 OK CR 32, ¶ 7, 709 P.2d 202, 203-204.

### *Argument and Authority*

The evidence at trial was that Mr. Darnell and an accomplice walked into a garage attached to a house located at 3421 South 114th East Avenue in Tulsa. The garage door was open and Gil Robledo, Jr., who lived at the house, was in the garage warming up his car when the men came into the garage. According to Mr. Robledo, the men asked about a package that they were supposed to pick up. (Vol. I, Tr. 155) In truth, there was no package, and the two men took out guns and forced Mr. Robledo into his house through a door which led from the attached garage to the kitchen. While the evidence certainly supported a robbery charge, the evidence was insufficient to support a burglary conviction, as there was no "breaking" into an "outer door" of the dwelling house as required by 21 O.S.2001, § 1431.

7

*Hendricks v. State,* 1985 OK CR 39, 698 P.2d 477 dealt with an Information which alleged, in relevant part, that the crime of first degree burglary was committed "by entering through an opening in the garage and breaking open the inner door of the said dwelling house." The factual basis of the charge in *Hendricks* was therefore quite similar, if not exactly the same, as the first degree burglary alleged in Count Four of the amended Information in the case before this Court. As described in footnote one of the *Hendricks* opinion:

> The "inner door" alleged in the information to have been broken by appellant was the door connecting the garage and the kitchen; it may not be deemed an actual "outer door" of the dwelling within the meaning of § 1431(1). A garage attached to a house and from which access may be had into the house, is a part of the "dwelling house," as used in § 1431, See *Harris v. State,* 41 Okl.Cr. 121, 271 P. 957 (1928) Accordingly, the door was truly inside the residence, *and its breaking could not constitute first degree burglary.* (Emphasis added.)

*Hendricks v. State,* 1985 OK CR 39, 698 P.2d 477 was overruled on other grounds in *Parker v. State,* 1996 OK CR 19, 917 P.2d 980; the failure of an Information to properly allege a crime is no longer a jurisdictional defect requiring the reversal of a conviction as long as a defendant has been provided adequate notice of the factual basis for the crime he has been charged with committing. That does not change the underlying basis for the decision in *Hendricks*: Entering through an open garage door and subsequently breaking through an inner door to gain access to a house does not constitute first degree burglary.

8

Defense counsel moved to dismiss Count Four at District Court Arraignment, and Judge Gillert reserved a ruling on the issue until trial. When he overruled the motion, he relied upon *Brecheen v. State,* 732 P.2d 889 (Okl.Cr. 1987).[1] (Vol. I, Tr. 97) In so doing he probably anticipated that there would be testimony in support of a "constructive breaking" into the garage.[2] "Constructive breaking" may occur when entry is obtained "by fraud, trick, or threats being armed with a dangerous weapon." *Breechen,* 732 P.2d at 894. In *Breechen,* the burglars had to open a glass and screen door before pushing their way into the house. The defendant had a rifle in his hand. Key to the decision was the fact that the burglars used physical force to break into the victim's house.

There was no constructive breaking into the Robledos' garage. There was no showing of force; the robbers did not even "trick" Gil Robledo into opening the garage door. Without even knowing that the two African-American men were still outside his house, Mr. Robledo opened the garage door because he wanted to warm up his car before driving to work. (Vol. I, Tr. 154) Even then, he did not see them right away. Apparently the men saw the door open, walked into to the garage, and asked Gil Robledo about a package. (Vol. I, Tr. 155) They did not have their weapons drawn as they entered the garage. (Vol. I, Tr. 156) Mr. Robledo claimed to see Appellant pull out a gun *after* he was in the garage. (Vol. I, Tr. 157) Clearly, Gil Robledo opened the door to the kitchen because the men drew their guns, but *Hendricks* makes it clear that that did not constitute a burglary. For burglary, the robbers would have had to force Robledo to open the garage

---

[1] *Breechen* was overruled on other grounds in *Brown v. State,* 1994 OK CR 12, 871 P.2d 56.
[2] There was no such testimony at preliminary hearing, however. (P.H. Tr. 16) Defense counsel's demurrer should have been granted and the prosecutor's request to amend the Information should have been denied.

9

door. That simply did not happen. Instead of modifying the uniform instructions,[3] Judge

Gillert should have sustained defense counsel's demurrer to the evidence. (Vol. I, Tr.

246) Appellant's conviction in Court Four should be reversed with instructions to

dismiss.

In the alternative to outright dismissal, this Court should modify Appellant's

conviction in Count Four to unlawful entry.[4] 21 O.S.2001, § 1438(A) states, in relevant

part:

> Every person who, under circumstances not amounting to any
> burglary, enters any building or part of a building ...with
> intent to commit any felony, larceny, or malicious mischief, is
> guilty of a misdemeanor. (OUJI-CR 5-16)

See generally *Jones v. State,* 1976 OK CR 238, 555 P.2d 63 (modifying conviction

for assault with intent to commit a felony to simple assault); *Billey v. State,* 1990 OK CR

76, 800 P.2d 741(modifying conviction for possession of marijuana with intent to

distribute to simple possession of marijuana). Appellant concedes that the evidence was

sufficient to support a conviction for unlawful entry in violation of 21 O.S.2001, §

1438(A). Should this Court be unwilling to dismiss his conviction for burglary in Count

Four with instructions to dismiss, his conviction should be modified to unlawful entry.

---

[3] Under the facts of the case before this Court, the jury was confused by the addition of language in Instruction #25 that "Breaking may also occur when entry is obtained by any other manner, such as fraud, trick, or threats being armed with a dangerous weapon." (O.R. 177) Defense counsel objected to the court's modification of the uniform instructions. (Vol. I, Tr. 248) Since there was no evidence that entry into the garage had been made by fraud, trick or threats, the jury clearly thought that the judge was referring to the entry into the kitchen. Appellant was improperly convicted of burglary by breaking into the kitchen of the house.
[4] Defense counsel did not request a lesser-included offense instruction.

(b) If you did not exhaust your state remedies on Ground One, explain why: 

N / A

ΙΙ

(c)    **Direct Appeal of Ground One:**
(1) If you appealed from the judgment of conviction, did you raise this issue?  ☒ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: 

N / A

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?    ☐ Yes   ☒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____ N / A _____

Name and location of the court where the motion or petition was filed: _____

ΙΙ

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

ΙΙ

(3) Did you receive a hearing on your motion or petition?          ☐ Yes   ☐ No
(4) Did you appeal from the denial of your motion or petition?    ☐ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
          ☐ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

N / A

ll

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: N/A

ll

**GROUND TWO:** Double Jeparody - Evidentiary Harpoon Doctrine

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Attached

(b) If you did not exhaust your state remedies on Ground Two, explain why:

N/A

ll

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?  Yes ☒  No ☐

(2) If you did <u>not</u> raise this issue in your direct appeal, explain why:

N /A

ll

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?  ☐ Yes  ☒ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: N / A

Name and location of the court where the motion or petition was filed:

ll

## PROPOSITION TWO:

**THIS COURT MUST REVERSE APPELLANT'S CONVICTION IN COUNT SIX WITH INSTRUCTIONS TO DISMISS. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR LARCENY OF AN AUTOMOBILE AND APPELLANT'S CONVICTION VIOLATED THE DOUBLE PUNISHMENT PROHIBITIONS OF OKLAHOMA LAW AS WELL AS THE UNITED STATES CONSTITUTION.**

### *Standard of Review*

Appellant believes any question of double punishment is a legal issue which can be reviewed on a *de novo* basis. In *Ashinsky v. State,* 780 P.2d 201, 208 (Okl.Cr. 1989), this Court affirmed prior decisions holding that a claim of double jeopardy is so fundamental that it can be raised by this Court on its own motion. Defense counsel objected to the larceny allegations in Count Six on the grounds that the allegation of automobile larceny in Count Six was included in the allegation of robbery alleged in Count Two. (Vol. I, Tr. 247)

The standard of review for an insufficient evidence claim is whether, "[w]hen viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Johnson v. State,* 2004 OK CR 24, ¶ 10, 93 P.3d 41, 44-45, quoting *Spueler v. State,* 1985 OK CR 32, ¶ 7, 709 P.2d 202, 203-204.

11

### *Argument and Authority*

### *1. Appellant was convicted of taking the BMW as part of the robbery allegations in Count Two. He cannot be punished again for the same act in Count Six.*

Count Two of the Information alleged that Terry Darnell, acting with in concert with an unknown male, committed robbery by wrongfully taking and carrying away a number of items of property from Leobardo and Gil Robledo. Included in the list of items taken was a "BMW motor vehicle." (O.R. 150) There can be no disagreement that this BMW motor vehicle is the exact same automobile alleged to have been stolen in Count Six of the Information; Appellant has suffered two convictions based at least in part for taking the same car. Defense counsel objected on this basis. (Vol. I, Tr. 247) Although Judge Gillert initially stated that he would consider the argument, he ultimately instructed the jury on both Count Two and Count Six.

Multiple convictions based upon a single act violate 21 O.S.2001, § 11A, which provides in relevant part:

> …[A]n act or omission which is made punishable in different ways by different provisions of this title may be punished under any of such provisions, …but in no case can a criminal act or omission be punished under more than one section of the law; and an acquittal or conviction and sentence under one section of law, bars the prosecution for the same act or omission under any other section of law.

In *Hale v. State,* 1995 OK CR 7, 888 P.2d 1027, all five Judges of the Oklahoma Court of Criminal Appeals agreed that 21 O.S.1991, § 11 precluded convictions for both incest and rape when the facts in support of the two charges were based on the same act of intercourse. At least two Judges disagreed with the *analysis* used by the *Hale* court,

however, and in *Davis v. State,* 1999 OK CR 48, 993 P.2d 124, a three-judge majority of

this Court overruled *Hale* in part, finding that convictions for larceny of an automobile

and larceny from a house did not offend 21 O.S.1991, § 11 under the facts of that case.

The majority concluded:

> Davis's crime of larceny from a house was completed when
> he left the house with the purse with the intent to permanently
> deprive the owner thereof. The fact that he used the keys
> which were in the purse to facilitate the stealing of the vehicle
> does not cause the larceny from the house to merge into the
> larceny of a vehicle. *Davis,* 1999 OK CR 48, ¶ 8. *** *If the
> crimes truly arise out of one act* as they did in *Hale, then
> Section 11 prohibits prosecution for more than one crime.*
> *Davis,* 1999 OK CR 48, ¶ 13. (Emphasis added.)

In *Henderson v. State,* F-2001-1338 (Okl.Cr. 2002),[5] the appellant argued that his

convictions for distribution of cocaine and conspiracy to distribute cocaine violated 21

O.S.2001, § 11 because they were based upon the same act. Normally this would not be

the case, as the facts necessary to prove a conspiracy are usually independent from those

necessary to prove the act constituting the underlying crime. However, in *Henderson,* the

Court of Criminal Appeals looked to the allegations contained in the Information and

determined that both charges were based upon the same factual allegations. "[T]he

Information in this case is unusually specific in its description of the conspiracy charge.

Henderson was charged in Count I with knowingly distributing cocaine, and in Count II

with conspiring to distribute cocaine with Walker by giving Walker crack and retrieving

---

[5] Pursuant to Rule 3.5 (C)(3), *Rules of the Court of Criminal Appeals,* Title 22, Ch. 18, App.
(2010), this unpublished opinion is cited because no published case would serve as well the
purpose for which counsel cites it. A copy of the *Henderson* decision is attached to this brief and
has been provided to opposing counsel.

the money from that sale from under a yard ornament. This exactly describes the facts used to support both the conspiracy and distribution charges." This Court dismissed Count Two.

Whether this Court relies upon 21 O.S.2001, § 11 or the Fifth Amendment of the United States Constitution, Appellant asks this Court to dismiss Count Six, larceny of an automobile.

### 2. *There was no evidence of the intent to steal or permanently deprive the owner of the BMW.*

Should this Court conclude that Count Six presents no double punishment issues, there is another, perhaps even more direct problem which requires the dismissal of the larceny conviction. Appellant would contend that the State failed to establish that the robbers had the intent to permanently deprive the Robledos of their BMW automobile. The jury was instructed as to the elements of larceny of an automobile in violation of 21 O.S.Supp.2002, § 1720:

> First, trespassory;
> Second, taking;
> Third, carrying away;
> Fourth, automobile;
> Fifth, of another;
> Sixth, with the intent to steal. (O.R. 182)

Perhaps it was the "intent to steal" which confused the jury. After all, as the verb is commonly used, there can be little doubt that the robbers "stole" the Robledos' vehicle. Stealing has a specific meaning in the law, and the jury was further instructed that the intent to steal means "purpose [?] forever to deny the person in rightful possession of the

14

use or value of property." (O.R. 182) Now, admittedly, one's intent is often a question of fact for the jury. *Richardson v. State,* 76 Okl.Cr. 101, 134 P.2d 375 (1943) As prosecutors are often heard to say, a criminal defendant rarely shouts out his intent for others to hear. ***We must determine one's intent from his or her actions.*** And what did the perpetrators of the Robledo robbery do in this case? They used the car to get away from the scene of the crime and quickly abandoned the vehicle within a few hundred feet of the robbery. They even left the keys in the car. Simply put, there was no evidence that Appellant, or anyone else, intended to *steal* the BMW.

At the very least, the jury should have been instructed on the lesser offense of "joyriding" pursuant to 21 O.S.2001, § 1787.[6]  To establish joyriding, the State must prove that the defendant:

> First, drove;
> Second, an automobile;
> Third, without the consent of the owner;
> Fourth, for any purpose. ( OUJI-CR 5-120)[7]

Counsel failed to request a joyriding instruction, but given that the "intent to steal" was unsupported by evidence, this Court should modify Appellant's conviction to joyriding. Abandoning the BMW is evidence that the robbers lacked the intent to permanently deprive the owners of the vehicle.

---

[6] Appellant recognizes that in 1946 this Court held that joyriding was not a lesser-included offense of larceny of an auto. See *Tillman v. State,* 169 P.2d 223, 227 (Okl.Cr. 1946). Appellant believes this to no longer be the law in Oklahoma. See *Shrum v. State,* 1999 OK Cr 41, 991 P.2d 1032 (adopting the "evidence test" for lesser-included offenses).

[7] The fourth element in OUJI-CR 5-120 states: "for the purpose of joyriding *or any other purpose.* " It seems that using the word "joyriding" is unnecessary as there is no real intent requirement for the offense. Any purpose will do.

Appellant asks first and foremost that this Court reverse his conviction for larceny of an automobile in Count Six with instructions to dismiss. In the alternative, this Court should modify his conviction to joyriding.

## PROPOSITION THREE:

**THE TESTIMONY OF TULSA POLICE OFFICER ANNETTE WILLIAMS RELATING TO A VICTIM'S DEATH CONSTITUTED AN EVIDENTIARY HARPOON. AT THE VERY LEAST, THE TESTIMONY'S RELEVANCE WAS OUTWEIGHED BY ITS PREJUDICIAL EFFECT, AND THE DISTRICT COURT FAILED TO TAKE ADEQUATE MEASURES TO REMEDY THE ERROR. APPELLANT WAS DENIED THE RIGHT TO A FAIR TRIAL PURSUANT TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

### *Standard of Review*

Defense counsel did not directly object to Officer Annette Williams' statements. He did bring the problem of Donald Payne's death to the District Court's attention,[8] and the court basically reminded the jury that Mr. Payne was still alive when he gave his preliminary hearing testimony. (Vol. I, Tr. 128) This was less than helpful. "It is well settled that unless objection is made to evidentiary harpoons any error is deemed waived and cannot be raised for the first time on appeal." *Brunner v. State,* 612 P.2d 1375 (Okl.Cr.1980) Of course, this Court is always free to review for plain error. Appellant has alleged that the police officer's speculation that a connection might exist between the robbery alleged in Count One and the victim's death was not relevant and highly prejudicial, as evidenced by the life sentence imposed by the jury. "Nothing in this

---

[8] Judge Gillert recognized the problem as "the specter of the possibility that there's foul play and so on and so forth." (Vol. I, Tr. 93) Prior to Donald Payne's testimony, defense counsel advised the District Court that he would be happy with the Court advising the jury "that he's died of natural causes and it doesn't have anything to do with this at all..." (Vol. I, Tr. 94)

section precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." *See* 12 O.S.2001, § 2104(D).

### *Argument and Authority*

The jury knew that Donald Payne died after he was robbed. They were never told exactly how or when he died. On direct examination, the prosecutor questioned Officer Annette Williams:

> Q. Have you become aware, Officer Williams, since this incident of the condition or current condition of Donald Payne?
>
> A. Yes, ma'am.
>
> Q. And what is that?
>
> A. He's passed away.
>
> Q. And do you know, did he pass away from natural causes?
>
> A. Yes. I went to the house *right after* and he wasn't home, so I went and checked on him a *few days later* and just talked to him and stuff to make sure he was okay. *And then I was informed he passed away.* (Vol. I, Tr. 116)(Emphasis in original unknown.)

The implication was that Donald Payne died shortly after the robbery, which was not true. And Officer Williams knew that it was not true. When defense counsel attempted to clear this up on cross-examination, it quickly became apparent that he was not going to get any help from the officer:

> Q. And Mr. Payne's unfortunate death, that had nothing to do with this case; correct?

> A. I don't know. I mean I can't say – he was very upset, so I
> can't say that it didn't because after a traumatic event like that
> – (Vol. I, Tr. 117)

Defense cut the officer off, but there was no objection. After Donald Payne's preliminary hearing testimony was read into the trial record, defense counsel pointed out to the court that the preliminary hearing in this case was four months after the robbery. The court advised the jury that the testimony was taken on April 17, 2009. (Vol. I, Tr. 128) This was not enough to dispel the deliberate harm caused by Officer Williams. The Court never advised the jury that Mr. Payne's death had nothing to do with this case, as previously requested by defense counsel. (Vol. I, Tr. 94)

On February 10, 2010, when the State issued a trial subpoena for Donald Payne, the Sheriff's Department attempted to serve him at his last known address. While there are few details in the record, the return indicates that Mr. Payne died three months earlier, in November of 2009. (O.R. 135) *This was almost a year after the robbery,* and the jury should have been told this given Officer William's prejudicial testimony. Mr. Payne appeared fine at the preliminary hearing in April. There was no evidence that he had ever been treated for any mental or physical ailment relating to the December 12, 2008, robbery.

Officer Williams testified that she tried to visit Donald Payne at some point and found out that he had died. Since he died sometime in November of 2009, the officer knew that Mr. Payne had lived almost a year after the robbery. Yet she deliberately withheld this important fact from the jury. Not only did she choose to ignore *when* she found out about Donald Payne's death, it is clear from her testimony that she went out of

18

her way to suggest to the jury that there was at least a possibility of a connection between the robbery and the man's death, when she clearly was aware that no such connection existed. It's difficult to even imagine such a connection, given the lack of physical injury and the span of time between the robbery and the witness's death.

The initial question, asked by the prosecutor, was whether Donald Payne died of natural causes. The correct answer to this question was "yes." (Vol. I, Tr. 116) Instead of answering the question, the officer suggested that Donald Payne died "of natural causes" shortly after the robbery. A heart attack might be deemed "natural causes," especially for an 81 year-old man. However, if the heart attack happened shortly after the robbery, it would not be unreasonable for jurors to connect the dots and assume that the heart attack was induced by stress, whether such a conclusion was warranted or not. A year later, death from a heart attack fails to carry the stigma than an earlier death would have.

As a general rule, this Court has labeled this kind of inadmissible suggestion of the commission of another crime as an "evidentiary harpoon." Specifically:

> [This] Court forbids witnesses from making "evidentiary harpoons" that unfairly skewer the defendant. The Court has described evidentiary harpoons as voluntary statements generally made by experienced police officers or by lay witnesses that "are willfully jabbed rather than inadvertent" to inject other crimes evidence calculated to prejudice the defendant and which do in fact prejudice the defendant. *Lambert v. State,* 984 P.2d 221, 235 (Okl.Cr. 1999)

Counsel failed to object to the initial harpoon, choosing instead to clear up any ambiguity on cross examination. It was in response to defense counsel's question that the officer exacerbated the harm already caused on direct. In keeping with the "harpoon"

19

metaphor, the officer threw the harpoon during the prosecutor's questioning, and then twisted it deeper into the wound during cross-examination.

The prejudice flowing from the error is self-evident and exceeded any possible probative value. *See* 12 O.S.Supp.2003, § 2403. The jury imposed a life sentence for the Donald Payne robbery. The jury only imposed a twenty-five year sentence for the Robledo robbery,[9] and the longest sentence imposed – other than the life sentence in Count One – was a thirty year term for burglary in Count Four. It is impossible to say with any confidence that the improper suggestion that Mr. Darnell was responsible for Donald Payne's death did not affect the length of the sentence imposed. Appellant's conviction in Count One must either be remanded for resentencing or modified to a shorter term.

---

[9] Objectively, the Robledo robbery was the more serious of the two. There were (at least) two victims, and there was more property taken.

Docket or case number (if you know): _____ N/A _____

Date of the court's decision: _____ ( ( _____

Result (attach a copy of the court's opinion or order, if available): _____

_____ (( _____

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☐ No
(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

~~Name and location of the court where the appeal was filed:~~ _____

_____ N/A _____

Docket or case number (if you know): _____

Date of the court's decision: _____ (( _____

Result (attach a copy of the court's opinion or order, if available): _____

_____ (( _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____ N/A _____

_____

_____ (( _____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: _____

_____ (( _____

**GROUND THREE:** Three of four prior felonies – used to enhance – were Transactional –

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____

_____ See Attached _____

_____

_____

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

(c)   **Direct Appeal of Ground Three:**
   (1) If you appealed from the judgment of conviction, did you raise this issue? ☐ Yes   ☐ No
   (2) If you did not raise this issue in your direct appeal, explain why: _____

   _____

   _____

(d)   **Post-Conviction Proceedings:**
   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?
      ☐ Yes   ☐ No
   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition: _____

   Name and location of the court where the motion or petition was filed: _____

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available): _____

   _____

   (3) Did you receive a hearing on your motion or petition?           ☐ Yes   ☐ No
   (4) Did you appeal from the denial of your motion or petition?        ☐ Yes   ☐ No
   (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?
                                                                          ☐ Yes   ☐ No
   (6) If your answer to Question (d)(4) is "Yes," state:

   Name and location of the court where the appeal was filed: _____

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available): _____

   _____

   _____

   (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

## PROPOSITION FOUR:

**THREE OF THE FOUR FORMER FELONY CONVICTIONS USED TO ENHANCE APPELLANT'S SENTENCE IN THE SENTENCING STAGE WERE TRANSACTIONAL. THE JUDGMENT AND SENTENCES ALSO REFLECTED THAT APPELLANT HAD PREVIOUSLY RECEIVED SUSPENDED SENTENCES AND SHOULD NOT HAVE BEEN PRESENTED TO THE JURY. DEFENSE COUNSEL'S FAILURE TO OBJECT WAS NOT A LEGITIMATE TRIAL STRATEGY AND CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

### *Standard of Review*

"To prevail on a claim of ineffective assistance of counsel, Appellant must overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance by showing: 1.) that trial counsel's performance was deficient; and 2.) that he was prejudiced by the deficient performance." *Humphreys v. State,* 947 P.2d 565, 577-78 (Okl.Cr. 1997); *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "To establish prejudice, Appellant must show a reasonable probability that, but for trial counsel's errors, the result of the [trial] would have been different." *Humphreys,* 947 P.2d at 578. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. Appellant must demonstrate that counsel's representation was unreasonable under prevailing professional norms and that the challenged action could not be considered sound trial strategy. *Strickland,* 466 U.S. at 688-89, 104 S.Ct. at 2065.

### *Argument and Authority*

The gravity of a claim of ineffective assistance of counsel cannot be overstated. "Of all the rights that an accused person has, the ability to be represented by counsel is by

far the most pervasive, for it affects his ability to assert any other rights he may have."
*Kimmelman v. Morrison,* 477 U.S. 365, 377, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)(quoting Walter V. Schaefer, *Federalism & State Criminal Procedure,* 70 Harv. L.Rev. 1, 8 (1956)).

### 1. *The prior judgment and sentences reflected Appellant's suspended sentences.*

Every one of the prior felony convictions offered in this case, State's Exhibits #34 through #37 all contained the same heading: "Modified at Review – Judgment and Sentence – All Time Suspended Felony." The three counts in CF-2006-5581 contained additional irrelevant and prejudicial information for jury. On May 29, 2008, Terry Darnell received a three year suspended sentence for two burglaries and one attempted burglary. The other judgment and sentence – in CF-2007-2189 – indicated that Appellant had received another three year suspended sentence on the same day for false impersonation. On December 12, 2008, when the crimes at issue in this appeal were allegedly committed, Mr. Darnell had been on probation for about six months, and the jury knew it.

In *Hunter v. State,* 2009 OK CR 17, 208 P.3d 931, jurors were improperly told about the appellant's prior suspended sentences in the second stage of his trial for distribution of a controlled substance. Not only did defense counsel fail to object to the suspended sentence information, counsel agreed to permit the prosecutor to read to the jurors the full supplemental second page which included the fact that at least a portion of the appellant's prior sentences had been suspended. Citing *Bell v. State,* 1962 OK CR

160, 381 P.2d 167, 173, a majority of the members of this Court found plain error and modified his sentence. The decision in *Hunter* relied, in part, upon the prosecutor's improper reference to the suspended sentences in his closing argument. Admittedly, the prosecutor in Mr. Darnell's case did not emphasize the suspended sentences in her closing argument.

Under similar facts, in *Smith v. State,* F-2009-535 (Okl.Cr. 2010),[10] this Court addressed a note sent by the jury during deliberations and held that "[t]he submission to the jury of the Judgment and Sentence referencing the suspended sentence and probation is actual, obvious, error." In *Smith,* the note submitted by the jury asked: "Will [the defendant] be required to finish his previous [suspended] sentence in addition to any sentencing we imply (sic)? Was he on probation when the drug offense occurred?" In Mr. Darnell's case, the judgment and sentences clearly indicated that Appellant was on probation at the time of the new offenses – there was no need for a note. The only note written by Mr. Darnell's jury inquired as to whether the "sentences [were] concurrent or consecutive?" (Vol. I, Tr. 310) With defense counsel's blessing, the court refused to answer the question.

---

[10] *Smith* is an unpublished decision. Pursuant to Rule 3.5(C)(3), *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2010), counsel cites *Smith* because no published case would serve as well the purpose for which counsel cites it. In *Smith,* the error in failing to redact the J&S was exacerbated by events surrounding a note from the jury. A copy of the *Smith* decision is attached to this brief and has been provided to opposing counsel.

### 2. *The jury was presented with three transactional offenses which were admitted without objection by defense counsel.*

The State presented a total of four judgment and sentences in the sentencing stage of Appellant's trial. The first – State's Exhibit #34 – was a conviction for second degree burglary in CF-2006-5581 which was initially offered in the second stage as an element of felonious possession of a firearm. (Vol. II, Tr. 284) Of the other three offered in the final stage of Appellant's trial, only one – State's Exhibit #37 – was not a transactional offense. (Vol. II, Tr. 301) State's Exhibit #37 was a May 29th, 2008, conviction for false impersonation in CF-2007-2189. The other three convictions represented by State's Exhibits #34, #35, and #36 reflect a series of burglaries which took place in a short span of time on the same day, November 16, 2006. The three offenses occurred within a few hundred feet of each other. Appellant was charged with each burglary in the same Information, in CF-2006-5581. Appellant entered pleas of guilty to each offense on the same day, May 29, 2008, and received suspended concurrent sentences. The offenses constitute separate crimes, but only one of the three convictions can be offered for enhancement pursuant to 21 O.S.Supp.2002, § 51.1(B), because the offenses arose out of "events closely related in time and location."

Of course, the underlying facts of the prior convictions are not apparent from the record, and it will be necessary to remand this case to either amend the record or have a full-blown hearing on the issue of ineffective assistance of counsel.[11] It is the duty of

---

[11] There is a reference to the transactional nature of the priors on page 296 of the jury trial transcript. Apparently, there was some discussion off the record about the priors, and a decision was made to strike a prior for knowingly concealing stolen property in CF-2006-5581. Since the actual discussion was not on the record, it is impossible to tell whether the precise issue addressed in this proposition of error was brought to the attention of the trial court.

defense counsel to demonstrate the transactional nature of prior offenses. *Bickerstaff v. State,* 669 P.2d 778, 780 (Okl.Cr. 1983) There can be no strategic value in waiving an objection to transactional priors. Pursuant to 21 O.S.Supp.2002, § 51.1(B), only one of the felony convictions in CF-2006-5581 should have been admitted. In the end, two of the four prior felony convictions were erroneously admitted into evidence in the final stage of Appellant's trial. The relevant portion of Section 51.1(B) states:

> Felony offenses relied upon [for enhancement] shall not have arisen out of the same transaction or occurrence *or series of events closely related in time and location.* (Emphasis added.)

There can be no doubt that Mr. Darnell committed four separate felony offenses in the two cases at issue herein, but only two of the four prior convictions can be used to enhance his sentence pursuant to 21 O.S.Supp.2002, § 51.1(B). See *Ezell v. State,* F-2000-1543 (Okl.Cr. 2002)(in spite of the fact that three convictions for feloniously pointing a weapon involved different victims, all offenses occurred on the same day and were charged in the same case. This Court held that this at least warranted further investigation by defense counsel).[12]

In *Cardenas v. State,* 1985 OK CR 21, ¶11, 695 P.2d 876, this Court modified a sentence improperly enhanced with transactional prior felony convictions. The court looked to the Informations and observed that the offense occurred on the same day, and at

---

Later, when State's Exhibits #35, #36, and #37 were admitted, defense counsel told the court that he was not offering any new objections, only "[p]reserving previous ones." (Vol. I, Tr. 301) The record is unclear – at least to the undersigned – as to what objections defense counsel is referring to.

[12] Pursuant to Rule 3.5(C)(3), *Rules of the Court of Criminal Appeals,* Title 22, Ch. 18, App. (2010), this unpublished opinion is cited because no published case would serve as well the purpose for which counsel cites it. Although appellate counsel submitted a number of exhibits in support of a request to remand, this Court found error and modified without a hearing. A copy of the *Ezell* decision is attached to this brief and has been provided to opposing counsel.

the same location. "The conclusion is inescapable, on the record before us, that the offenses were 'a series of events closely related in time and location,' and that only one could be used for enhancement." See also *Hammer v. State,* 1983 OK CR 151, 671 P.2d 677 (priors for pointing a weapon and kidnapping arose out of an incident at Baptist Hospital in Oklahoma City. The cases were consecutively numbered and tried together).

Obviously, even after striking the transactional felony convictions, two remain and that is sufficient for enhancement under 21 O.S.Supp.2002, § 51.1(B). This does not mean that Mr. Darnell suffered no prejudice as a result of the admission of transactional prior felonies. See *Miller v. State,* 1984 OK CR 33, 675 P.2d 453 (although two prior felony convictions remained for enhancement, this Court modified appellant's sentence from a fifty-year term to twenty years); *Coleman v. State,* 1988 OK CR 143, 760 P.2d 196 (four valid priors remained after this Court found that one should not have been offered as transactional, thirty-year sentence modified to the minimum of twenty years). The prosecutor emphasized Mr. Darnell's prior felony convictions in her closing argument. After warning the jury not to consider State's Exhibit #34 when determining an appropriate sentence for the offense of felonious possession of a firearm, she continued:

> But lookie here, you've ***still got three more*** [felony convictions]. And on all the other counts, on the robbery, Count 1, robbery in the first degree; Count 2, robbery with a firearm; Count 3, burglary in the first degree; Count 4, burglary in the first degree; and Count 6, larceny of an automobile, ***you consider all of them.*** (Vol. II, Tr. 303)(Emphasis in the original unknown.)

She continued: "These are certified court documents that indicate ***Terry Reon Darnell has been convicted four times previously of felony charges.*** (Vol. II, Tr. 304) "...[T]hese are the minimum sentences if these aren't here. The minimum sentences that are available under the law of the state of Oklahoma are only those minimums if he has no priors. ***He's got four of them.***" (Vol. II, Tr. 307) Terry Darnell committed six new felonies[13] to add ***on top of the four he's already got.***" (Vol. II, Tr. 308) "Enough is enough. Enough is enough, ladies and gentlemen. ***There's four felonies.***" (Vol. II, Tr. 308) (Emphasis in original unknown.)

The prosecutor asked the jury to consider the maximum punishment. She asked the jury to impose "at least one life," and they accommodated her wishes by imposing a life sentence in Count One. (Vol. II, Tr. 309) The fact that Appellant had four prior felony convictions was important to the prosecutor, and she specifically requested a life sentence based upon Mr. Darnell's criminal history. This Court should either remand Count One for resentencing or modify to a term no greater than twenty-five years.

---

[13] This wasn't true either. As argued in Appellant's first two propositions of error, the jury should have only been instructed on four new felonies.

_____

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____ N/A _____

**GROUND FOUR:** Prejudice - by improper joinder - Denial of fair trial - Combined Error - Denied fair Trial

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____ see   Attached _____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____ N/A _____

_____

_____

(c)     **Direct Appeal of Ground Four:**
(1) If you appealed from the judgment of conviction, did you raise this issue?   ☒ Yes   ☐ No
(2) If you did not raise this issue in your direct appeal, explain why: _____
N/A

(d)     **Post-Conviction Proceedings:**
(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?   ☐ Yes   ☒ No
(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

## PROPOSITION FIVE:

**APPELLANT WAS PREJUDICED BY THE IMPROPER JOINDER OF OFFENSES IN THIS CASE. TRYING THE ROBBERIES TOGETHER VIOLATED HIS RIGHT TO A FAIR TRIAL PURSUANT TO THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS RELEVANT STATUTORY PROVISIONS IN OKLAHOMA LAW.**

### *Standard of Review*

Defense counsel did not request a severance of counts in this case. Therefore, as a general rule, this Court reviews only for plain error. See *Wood v. State,* 1998 OK CR 19, ¶ 45, 959 P.2d 1, 12. Plain errors are "errors affecting substantial rights although they were not brought to the attention of the court." See *Simpson v. State,* 876 P.2d 690, 694 (Okl.Cr. 1994). In *Jones v. State,* 772 P.2d 922, 925 (Okl.Cr. 1989), this Court found the standard to be consistent with the longstanding "fundamental error" standard of older case law. "From this, we can in this context safely say a 'substantial right' is the same as a 'fundamental right.'"

### *Argument and Authority*

A defendant is entitled to a severance of counts for the purpose of trial if trying multiple counts subverts his right to be convicted, if at all, for the crime which he has been charged with committing, and nothing else. *See* 22 O.S. 2001, § 439; *Hawkins v. State,* 419 P.2d 281 (Okl.Cr. 1966). The language of Section 439 is mandatory:

> If it appears that a defendant or the state is prejudiced by joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court *shall* order an election or separate trial of counts, grant a severance of defendants, or provide whatever other relief justice requires. 22 O.S.2001, § 439 (Emphasis added.)

28

In fact, until 1968, the prosecution was prohibited from alleging more than one criminal offense in a single Information. 22 O.S.2001, § 436 altered prior law, but the new statute was hardly a blanket endorsement of multi-count Informations:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately, provided that all of the defendants charged together in the same indictment or information are alleged to have participated in all of the same acts or transactions charged.

The language of Section 436 spoke of the joinder of *defendants* and not *counts*. The statute's application to multiple counts in an Information was not made clear until 1977, when this Court decided *Dodson v. State,* 562 P.2d 916 (Okl.Cr. 1977). In a specially concurring opinion, Judge Brett looked to the title and language of the Act as it appeared in the 1968 session laws and concluded that the joinder of counts in an Information, while permitted, was subject to the same restrictions as those which applied to defendants: the counts must result from the same act or transaction, or at least be part of the same series of acts or transactions. Oklahoma law has *never* permitted *unrelated* counts to be charged in the same Information.[14]

From Appellant's perspective, there was no good reason to try these cases together. The more witnesses who testified that Terry Darnell robbed them the greater

---

[14] In fact, 22 O.S.2001, § 404 still specifically prohibits charging more than one offense in the same Information. This statute has never been formally repealed. This Court has nevertheless concluded that the statute was repealed by implication by the enactment of 22 O.S.2001, § 436 (in spite of the fact that, as already stated, the language of the statute speaks of the joinder of defendants and not offenses). See *State v. Lowe,* 1981 OK CR 26, ¶ 1, 627 P.2d 442, 443.

chance that he would be convicted of all counts against him. The only real reason to join the two robberies and burglaries in this case was for the convenience of the trial court. In spite of the mandatory language of 22 O.S.2001, § 439, this Court held in *Glass v. State*, 1985 OK CR 65, ¶ 9, 701 P.2d 765, 768, that joinder of a series of criminal acts is proper where the joined counts refers to: (1) the same type of offense; (2) occurring over a relatively short period of time; (3) in approximately the same location; and (4) proof of each act or transaction overlaps so as to show a common scheme or plan.

Even under the *Glass* standard, Appellant would argue that the two robberies were independent of one another and did not "overlap so as to show a common scheme or plan." *Johnson v. State*, F-2008-1171 (Okl.Cr. 2010),[15] addressed the joinder of two burglaries which "occurred on the same night, in a four block radius." Citing to *Smith v. State*, 2007 OK CR 16, ¶ 28, 157 P.3d 1155, 1166, this Court held:

> [T]he degree to which the proof of the separately charged offenses overlaps in showing that a series of criminal acts or transactions constitute a common scheme or plan determines whether joinder is proper. Because there was no overlapping proof in the two burglaries, *joinder was not appropriate in this case. Johnson*, page 3.[16]

This Court has held that mere similarity of offenses is not enough to create a "common scheme or plan." *Atnip v. State*, 564 P.2d 660 (Okl.Cr. 1977)(fact that crimes

---

[15] *Johnson* is unpublished. In the undersigned's opinion, "no published case would serve as well the purpose for which counsel cites it" in part because of the specific reference to probation. A copy of the decision is attached hereto and provided to appellate counsel. *See* Rule 3.5(C)(3), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2010).

[16] Admittedly, the *Johnson* court refused to find "plain error." It is confusing for members of this Court to conclude that joinder was improper, yet refuse to find error. If joinder was improper, then it was error for the counts to be joined. If it is the Court's desire to deny relief, it would be more accurate (in the opinion of the undersigned) to conclude that "[d]ue to the independently supported identifications in each offense," the error was not prejudicial and therefore harmless.

were all burglaries committed on the same day by the same three people does not establish a common scheme or plan). A common scheme or plan contemplates some relationship or connection between the crimes; the commission of one crime must depend upon or facilitate the commission of the other crime.[17] However, evidence of other crimes should *never* be admitted under this exception when it shows that the accused committed crimes wholly independent of that charged. *Atnip,* 564 P.2d at 663.

Should this Court find that the joinder of charges herein to be proper under *Glass v. State,* 1985 OK CR 65, ¶ 9, 701 P.2d 765, 768, Appellant would still contend that his convictions must be reversed and remanded for a new trial. The jury was not advised of the necessity that they keep the counts separate. OUJI-CR 9-6 provides:

> EVIDENCE – SEPARATE CONSIDERATION FOR EACH OFFENSE
>
> You must give separate consideration for each offense. The defendant is entitled to have his case decided on the basis of the evidence and law which is applicable to each offense. The fact that you return a verdict of guilty or not guilty on one offense should not, in any way, affect your verdict regarding any one of the other offenses.[18]

This distinguishes the facts of the case before this Court from those of *Smith v. State,* 2007 OK CR 16, ¶ 38, 157 P.3d 1155, where the Oklahoma Court of Criminal

---

[17] A common example of the appropriate use of "common scheme or plan" other crimes evidence involves sexual abuse. For example, in *Salyers v. State,* 755 P.2d 97 (Okl.Cr. 1979), this Court permitted evidence of prior incidents of sexual abuse committed upon the same children. See also *Huddleston v. State,* 695 P.2d 8 (Okl.Cr. 1985); *Little v. State,* 725 P.2d 606 (Okl.Cr. 1986). In these cases, the crimes were so related that proof of one truly tended to establish the other. The evidence "tends to support the conclusion that there was a plan or system which embraced that and the crime for which [appellant was] charged," in that "the [prior] crime [was] committed to prepare the way for another and the commission of the second crime [was] made to depend on the first." *Roulston v. State,* 307 P.2d 861, 869 (Okl.Cr. 1985)

[18] This quote is taken from *Smith v. State,* 2007 OK CR 16, ¶ 38, 157 P.3d 1155, and not the actual text of the Uniform Jury Instructions. In *Smith,* this Court made no mention of the fact that the text of OUJI-CR 9-6 refers to separate consideration for defendants, and not counts. The Oklahoma Uniform Jury Instruction Committee has approved a similar instruction in OUJI-CR 9-6A, which likely will – one day – be adopted by this Court.

Appeals refused to find error in the joinder of two counts of murder. "[I]n light of the fact that the jury was specifically instructed to give separate consideration to each offense, we cannot conclude that the joinder of the Moore and Pulluru murders resulted in prejudice so great as to deny Smith a fair trial." *Smith* at ¶ 38.  Mr. Darnell's jury did not have the benefit of this instruction.

Not only did the district court fail to instruct the jury to keep the offenses separate, the prosecutor advised the jury in closing to do just the opposite and treat the two robberies as "connected."

> And also important, ladies and gentlemen, *when you're connecting these two robberies* is what do they do at the Robledos? They, of course, make them take all the electronics, the TVs, everything, load them up, put them in the BMW, you heard all that. But what else do they do? *The same thing that they did with Donald Payne.* They took all the phones. They don't leave them with any phones to call the police. So what do they have to do? *Very similarly to Donald Payne,* they have to get in a car, drive to their dad's where he works as a mechanic to call the police. *See the similarities there, ladies and gentlemen? See that connection?* Use your common sense and that reasonable standard. (Vol. II, Tr. 257, 258)(Emphasis in original unknown.)

Without objection from defense counsel, the prosecutor continued with a comparison of a gun taken in one robbery and a gun used in the second robbery.[19] (Vol. II, Tr. 260) This was not based upon any evidence other than the fact that one of the guns in the second robbery was described as a revolver. It was not, as suggested by the prosecutor, described as a "Western" type of gun.

---

[19] While it is *possible* that Donald Payne's gun was used in the second robbery, the truth is that the men who robbed Donald Payne were both armed. If the robbers were the same in both robberies, there is no reason to belief that one of the robbers changed guns for the second robbery. Since the guns were not recovered, The Robledos were unable to identify Mr. Payne's gun as having been used in the robbery.

The improper joinder of offenses in this case violates the Fifth and Fourteenth Amendments to the United States Constitution. In *United States v. Lane,* 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986), the Supreme Court held that while improper joinder, in and of itself, did not violate the Constitution, reversal is required when the joinder "results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Lane,* footnote 8. In *Lane,* the issue was improper joinder of defendants and not counts. However, the Tenth Circuit has cited *Lane* in a case involving misjoinder of counts, and Appellant can see no reason to apply a different standard to this case. See *Cummings v. Sirmons,* 506 F.3d 1211, 1239 (10th Cir. 2007). The joinder of multiple offenses in a single trial may result in prejudice to a defendant because "the jury may use the evidence of one of the crimes charges to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged." See *Drew v. United States,* 331 F.2d 85, 88 (D.C.Cir. 1964)(reversing convictions for robbery and attempted robbery due to improper joinder).

Recognizing that defense counsel failed to object, Appellant would ask that in the alternative to finding plain error that this Court review the issue as a violation of the Sixth Amendment to the United States Constitution. There was no strategic benefit to trying the two robbery cases together. All of Appellant's convictions must be reversed in order that the two robbery counts – as well as any associated charges which survive this appeal – can be tried in two separate proceedings.

## PROPOSITION SIX:

**THE COMBINED ERROR DURING APPELLANT'S TRIAL SERVED TO DENY HIM THE RIGHT TO A FAIR TRIAL GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

### *Standard of Review*

While the individual propositions of error in this brief must be reviewed with deference to the decision of the district court, it is believed that this Court is free to employ *de novo* review when deciding whether or not to reverse based on a theory of cumulative error.

### *Argument and Authority*

Even if this Court concludes that none of the previously discussed errors, when viewed in isolation, necessitate reversal of Appellant's conviction, the combined effect of these errors deprived him of a fair trial and requires reversal. See *Skelly v. State,* 880 P.2d 401, 407 (Okl.Cr. 1994); *Peninger v. State,* 811 P.2d 609, 613 (Okl.Cr. 1991); *Gooden v. State,* 617 P.2d 248, 249-250 (Okl.Cr. 1980).

34

## CONCLUSION

Appellant asks that this Court reverse his convictions in Counts Four and Six and remand with instructions to dismiss. The remaining counts should be remanded for two separate trials as argued in this brief. Otherwise, Appellant's conviction in Count One should be remanded for resentencing or modified to a term no greater than twenty-five years.

Respectfully submitted,

STUART W. SOUTHERLAND OBA #12492
Assistant Public Defender
423 South Boulder, Suite 300
Tulsa, Oklahoma 74103
Telephone: (918) 596-5530
Facsimile: (918) 596-5559
*Attorney for Appellant*

(3) Did you receive a hearing on your motion or petition? ☐ Yes ☒ No
(4) Did you appeal from the denial of your motion or petition? ☐ Yes ☒ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☐ Yes ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____ N A _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this

issue: _____ N A _____

_____

_____

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies,

etc.) that you have used to exhaust your state remedies on Ground Four: _____

NO NE

_____

13. Please answer these additional questions about the petition you are filing:

(a) Have all grounds for relief that you have raised in this petition been presented to the highest
state court having jurisdiction? ☒ Yes ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s)

for not presenting them: _____ N A _____

_____

_____

(b) Is there any ground in this petition that has not been presented in some state or federal court?
If so, which ground or grounds have not been presented, and state your reasons for not

presenting them: _____ NO

_____

_____

_____

14.   Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?   ☐ Yes   ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.   _____

_____   NONE   _____

_____   ''   _____

_____

_____   ''   _____

15.   Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or or federal, for the judgment you are challenging?   ☐ Yes   ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.   _____   NONE   _____

_____   ''   _____

16.   Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:   _____

(b) At arraignment and plea:   _____

_____

(c) At trial:   _____

_____

(d) At sentencing:   _____

(e) On appeal:   Stuart W. Southerland, Public Defender
_____   423 South Boulder, Suite 300, Tulsa, OK 74103

(f) In any post-conviction proceeding:   _____   N/A   _____

_____

(g) On appeal from any ruling against you in a post-conviction proceeding:   _____
_____   N/A   _____

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?  ☐ Yes  ☐ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

_____

(b) Give the date the other sentence was imposed:  _____

(c) Give the length of the other sentence:  _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?  ☐ Yes  ☐ No

18.  ~~TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you~~ must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*  The facility was on modified program four (4) times within the last six months, the modified program (lock-down) was due to security threat Groups, and did not allow any inmate movements through out the facility, the partial release of inmates was granted on November 5, 2012.

Due to the state created impediment I duly request the tolling of time, the duration of the last two lock-downs, be granted in my favor, as I was under extra ordinary circumstances, and was unable to make my October 4, 2012 deadline.

Thank you.

_____

_____

_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)   A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

   (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

   (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: _____

_____

_____

or any other relief to which petitioner may be entitled.


_____
Signature of Attorney (if any)
In Pro Se'

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Writ of Habeas Corpus was placed in the prison mailing system on Nov- 2012 (month, date, year).


Executed (signed) on _____ (date).


_____
Terry Darnell
Signature of Petitioner

## Offender Grievance Process
### REQUEST TO STAFF

TO: _Mrs. Douglas_ FACILITY/DIST/UNIT: _DCF_ DATE: _11-05-12_
(NAME AND TITLE OF STAFF MEMBER)

I have ____ have not _✓_ already submitted a "Request to Staff" or grievance on this same issue.

If yes, what date: _____ facility: _____ grievance #: _____

I affirm that I do ____ do not _✓_ have a grievance pending on this issue.

I affirm that I do ____ do not _✓_ have a lawsuit of any type pending that relates in any way to this issue.
If a lawsuit is pending, indicate case number: _____

This request _____ does _✓_ does not relate to a pending misconduct report. If it does, this request may only be answered by the investigator assigned to the misconduct.

**SUBJECT:** State completely, but briefly, the problem on which you desire assistance. This statement must be specific as to the complaint, dates, places, personnel involved, and how you were affected. One issue or incident per "Request to Staff." Your failure to specifically state your problem may result in this being returned unanswered.

_Please assist me with filing my Federal_
_Appeal, my legal deadline expired during_
_the lock down, and I am asking for_
_verification, to submitt to the U.S._
_Dist. Court - Northern, than partial normal program_
_was not until November 5, 2012._

(USE OTHER SIDE IF MORE SPACE IS NEEDED. DO NOT ATTACH ADDITIONAL PAGES.)

**ACTION REQUESTED:** State exactly how you believe your request may be handled; that is, what exactly should be done and how.

_To recieve a sign-writter verification_
_that Davis was on modified program_
_until today._
_thank you_

NAME: _Terry Darnell_ DOC NUMBER: _546875_ UNIT & CELL NUMBER: _FD22F_
(PRINT)

SIGNATURE: _XC_ WORK ASSIGNMENT: _N/A_

### DO NOT WRITE BELOW THIS LINE

DISPOSITION:
_Verified above to be true._

STAFF MEMBER _Tu Douglas_ DATE _11-5-12_

1. Original to file
2. Copy to offender

DOC 090124D (R 5/11)

IN THE COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

TERRY REON DARNELL,                    )
                                       )
              Appellant,               )
                                       )
v.                                     )        Case No. F-2010-452
                                       )
STATE OF OKLAHOMA,                     )
                                       )
              Appellee,                )

PETITION FOR REHEARING
AND BRIEF IN SUPPORT THEREOF

COMES NOW the Defendant, Terry Reon Darnell, and requests that this
Court grant a rehearing in this case pursuant to Rule 3.14(B)(1), *Rules of the
Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2011), for the
reason that a "question decisive of the case and duly submitted by the attorney of
record has been overlooked by the Court."

PROPOSITION ONE: THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH THE OFFENSE
OF FIRST DEGREE BURGLARY IN COUNT FOUR.

It is rare indeed when an attorney writing a brief is able to find a case as
"on point" as *Hendricks v. State,* 1985 OK CR 39, 698 P.2d 477. The Information
in *Hendricks* alleged the same basis for first degree burglary as in the case before
this Court. In *Hendricks,* the Information alleged that the burglary was committed

1

"by entering through an opening in the garage and breaking open the inner door of the said dwelling house." This Court reversed the appellant's conviction because breaking an inner door from the garage does not constitute burglary. Recognizing the similarity to Mr. Darnell's case, Appellee urged "this Court to overrule its decision in *Hendricks* insofar as to find that [Appellant's] act of forcing [the victim] at gunpoint through the door into the kitchen constituted a breaking." (Appellee's brief at 13) Appellee then asked this Court to follow case law from Maryland instead of *Hendricks.*

Not only did this Court fail to overrule *Hendricks,* the case was not mentioned in Mr. Darnell's "Summary Opinion".  Instead, the opinion cited to *Patton v. State,* 1998 OK CR 66, ¶ 42, 973 P.2d 270, 287, for the finding that "the evidence [was] sufficient to show constructive breaking into the dwelling perpetrated by fraud, trick, and threats, made while Appellant and his accomplice were armed with a dangerous weapon."

This Court failed to address the fact that there was no breaking – constructive or otherwise – when Appellant walked unmolested into an open garage. No one even told him to stop. The facts in *Patton* were quite different; the appellant in that case "told police that he went to the victim's front door and asked for money. Not satisfied with the amount of money the victim brought to the door, [a]ppellant pushed his way into the house and demanded to know where the rest of the money was." *Patton,* ¶ 42. The "breaking" necessary for burglary has been defined by this court as "any act of physical force, however slight, by which

2

obstructions to entering are removed." *Breechen v. State,* 732 P.2d 889, 893 (Okl.Cr. 1987) There was a breaking in *Patton.*

There can be no question, under the evidence presented at Appellant's trial, that there was no "breaking" into the garage; the door was wide open. The question for this Court was whether the breaking into the inner door from the garage to the house was sufficient to constitute first degree burglary, and the question was not answered in the Summary Opinion. If it is this Court's wish to overrule *Hendricks* on the stated grounds, it should do so. Otherwise, *stare decisis* and the Rule of Law require the reversal of Appellant's conviction for first degree burglary.

PROPOSITION FOUR: THREE OF THE FOUR FELONY CONVICTIONS USED TO ENHANCE APPELLANT'S SENTENCE IN THE SENTENCING STAGE WERE TRANSACTIONAL.

Pursuant to 21 O.S.Supp.2002, § 51.1(B), only one of the felony convictions in CF-2006-5581 should have been admitted. In the end, two of the four prior felony convictions were erroneously admitted into evidence in the final stage of Appellant's trial. The relevant portion of Section 51.1(B) states:

> Felony offenses relied upon [for enhancement] shall not have arisen out of the same transaction or occurrence *or series of events closely related in time and location.* (Emphasis added.)

There can be no doubt that Mr. Darnell committed four separate felony offenses in the two cases at issue herein, but only two of the four prior convictions

can be used to enhance his sentence pursuant to 21 O.S.Supp.2002, § 51.1(B). In the "Summary Opinion" this Court concluded:

> Appellant's three prior burglaries occurred on the same day, in a several block radius, at three different locations, involving three different residences. The fact that they were close in time and proximity does not transform three separate burglaries into one offense. (Summary Opinion at 6)

It is not necessary for Appellant to establish that his three prior burglaries were "one offense." This Court has never taken the time to elaborate on what constitutes a "series of events closely related in time and location," but it should be clear that it is not necessary for prior crimes to have occurred at the exact same time and place to fall within the prohibition of 21 O.S.Supp.2002, § 51.1(B). To interpret the language so narrowly would be to render the "series of events" language superfluous. This Court has ignored the clear language of the statue and therefore failed to answer a question decisive of the case: Do three burglaries committed one after the other on the same day, on the same morning, within a few blocks of one another, constitute a "series of events closely related in time and location?" *See* 21 O.S.Supp.2002, § 51.1(B). One would think that three crimes committed "close in time and proximity" would satisfy Section 51.1(B). The only case cited by this Court was *Johnson v. State,* 1988 OK CR 242, ¶ 12, 764 P.2d 197, 201, which held:

> The fact that appellant pled guilty to seven of these convictions on the same date is insufficient to meet his burden of proof. *Id.* Moreover, the prosecutor established on re-cross examination that six of these

4

> former convictions involved different victims, residing at different addresses, and *the crimes occurred on different dates.*

There are, apparently, no published cases addressing the precise question presented in Mr. Darnell's appeal. Appellant contends that there should be. If committing three burglaries, on foot, one after the other, does not constitute a "series of events closely related in time and location," then this Court should explain how that differs from crimes which "occurred the same morning, within blocks of each other, in essentially the same manner."[1] (Opinion at 7)

Finally, this Court makes the bold claim that there exists "no reasonable probability of a different outcome at trial" had the jury been told of two prior felony offenses rather than four. (Opinion at 6) Given the fact that Mr. Darnell received the maximum sentence permitted by law – life – for robbery with a dangerous weapon in Count One,[2] such a statement can have but one basis. This Court has collectively concluded that, had the jury consisted of the five member of this Court, they would have imposed the same sentence irrespective of the number of former convictions entered into evidence. This is not an appropriate test for appellate review. Even if it were, it is a dishonest one; this Court specifically found Appellant's lengthy sentence to be justified by "Appellant's recidivism and use of firearms to burglarize and rob unsuspecting residents..." (Opinion at 5) The

---

[1] This was the justification offered in response to Appellant's argument in Proposition Five, wherein he claimed that his robberies were improperly joined for trial.

[2] Appellant was ultimately sentenced to serve a term of life for Count One plus an additional 75 years on Counts Three, Four, and Five. 75 years of his sentence (life + 30) is subject to the "85% Rule." Mr. Darnell turned 25 years old on October 7, 2011, and he will die in prison.

prosecutor emphasized Appellant's prior record – repeatedly – during her closing argument.

## CONCLUSION

Appellant requests that this Court grant the requested relief and address the issues raised in Appellant's first and fourth propositions of error. Appellant's fourth proposition of error requires this case be remanded for a hearing on the issue of ineffective assistance of counsel.

Respectfully submitted,

Stuart W. Southerland #12492
Assistant Public Defender
Pythian Building
423 South Boulder Ave., Suite 300
Tulsa, OK 74103
(918) 596-5530

## CERTIFICATE OF DELIVERY

I, Stuart W. Southerland, do hereby certify that on the _____ day of October, 2011, I caused to be delivered a true and correct copy of the above and foregoing to the Attorney General for the State of Oklahoma and the Appellant herein.

_____
Stuart W. Southerland